UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DELIA P., an Individual,<br><br>    Plaintiff,<br><br>    v.<br><br>ANDREW M. SAUL, Commissioner of Social Security,<br><br>    Defendant. | Case No.: 5:19-00246 ADS<br><br><br>MEMORANDUM OPINION AND ORDER |

## I. INTRODUCTION

  Plaintiff Delia P.[1] ("Plaintiff") challenges Defendant Andrew M. Saul[2], Commissioner of Social Security's (hereinafter "Commissioner" or "Defendant") denial of her application for supplemental security income ("SSI"). Plaintiff contends that the

---

[1] Plaintiff's name has been partially redacted in compliance with Federal Rule of Civil Procedure 5.2(c)(2)(B) and the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States.

[2] On June 17, 2019, Saul became the Commissioner of Social Security. Thus, he is automatically substituted as the defendant under Federal Rule of Civil Procedure 25(d).

Administrative Law Judge ("ALJ") improperly considered the medical evidence and her testimony in assessing her residual functional capacity. For the reasons stated below, the decision of the Commissioner is affirmed, and this matter is dismissed with prejudice.

## II.   FACTS RELEVANT TO THE APPEAL

A review of the entire record reflects certain uncontested facts relevant to this appeal. Plaintiff's SSI application alleges disability based on "scoliosis, arthritis of the spine and bipolar." (Administrative Record "AR" 56). When asked at the Administrative hearing what prevents her from working, Plaintiff testified that her neck pain is very bad and causes her arms to go numb and that the pain travels to her lower back as well. (AR 38). Plaintiff also testified that she is bipolar and suffers from depression. (Id.). Plaintiff testified that she had issues with anemia, but the issue has been resolved with the cessation of her menstruation. (AR 43).

Plaintiff has almost no reported work history. She has de minimis reported income from 1981 and 1982 and then no further reported income until 1999, which was $2,443.09. (AR 166-68, 174). She testified that the work involved making syringes for a pharmaceutical company and that the job was only seasonal, which is why it only lasted three months. (AR 37-38; 207-08). She has no further reported income after 1999. (AR 167-68, 174). Plaintiff testified that she had tried to find work in the past, but she has little work experience as she was basically a stay at home mom to her seven (now adult) children. (AR 38).

Plaintiff completed a Function Report in February 2015 wherein she stated that she cooks and cleans up after herself, does laundry, sweeps, shops with her sister, does puzzles and reads. (AR 223-31). Plaintiff reported that she lives with family and has no

problems in socializing and interacting with others, although it is less than she used to do before her medical problems. (Id.). Plaintiff's sister-in-law also completed a Third-Party Function Report in February 2015, which was consistent with Plaintiff's stated symptoms and limitations. (AR 175-203).

## III. PROCEEDINGS BELOW

### A. Procedural History

Plaintiff protectively filed her application for SSI on December 17, 2014, alleging disability beginning November 15, 2011. (AR 160, 182). Plaintiff's claims were denied initially on April 10, 2015 (AR 69), and upon reconsideration on August 13, 2015 (AR 83). A video hearing was held before ALJ Dante M. Alegre on October 3, 2017. (AR 31-55). Plaintiff, represented by counsel, appeared and testified at the hearing, as did vocational expert Lynda Berkley. (Id.)

On January 31, 2018, the ALJ found that Plaintiff was "not disabled" within the meaning of the Social Security Act.[3] (AR 15-26). The ALJ's decision became the Commissioner's final decision when the Appeals Council denied Plaintiff's request for review on January 18, 2019. (AR 1-6). Plaintiff then filed this action in District Court on February 7, 2019, challenging the ALJ's decision. [Dkt. No. 1]. The case is ready for decision.[4]

---

[3] Persons are "disabled" for purposes of receiving Social Security benefits if they are unable to engage in any substantial gainful activity owing to a physical or mental impairment expected to result in death, or which has lasted or is expected to last for a continuous period of at least 12 months. 42 U.S.C. §423(d)(1)(A).

[4] The parties filed consents to proceed before the undersigned United States Magistrate Judge, pursuant to 28 U.S.C. § 636(c), including for entry of final Judgment. [Dkt. Nos. 11, 12].

**B. Summary of ALJ Decision After Hearing**

In the decision (AR 15-26), the ALJ followed the required five-step sequential evaluation process to assess whether Plaintiff was disabled under the Social Security Act.[5]  20 C.F.R. § 416.920(a).  At **step one**, the ALJ found that Plaintiff had not been engaged in substantial gainful activity since December 17, 2014, the application date. (AR 17).  At **step two**, the ALJ found that Plaintiff had the following severe impairments: (a) cervical and lumbar degenerative disc disease; and (b) bilateral carpal tunnel syndrome.  (AR 17).  At **step three**, the ALJ found that Plaintiff "does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926)."  (AR 20).

The ALJ then found that Plaintiff had the Residual Functional Capacity ("RFC")[6] to perform light work as defined in 20 C.F.R. § 404.1567(b)[7,] further restricted by the following limitations:

---

[5] The ALJ follows a five-step sequential evaluation process to assess whether a claimant is disabled: Step one: Is the claimant engaging in substantial gainful activity?  If so, the claimant is found not disabled.  If not, proceed to step two.  Step two: Does the claimant have a "severe" impairment?  If so, proceed to step three.  If not, then a finding of not disabled is appropriate.  Step three: Does the claimant's impairment or combination of impairments meet or equal an impairment listed in 20 C.F.R., Pt. 404, Subpt. P, App. 1? If so, the claimant is automatically determined disabled.  If not, proceed to step four. Step four: Is the claimant capable of performing his past work?  If so, the claimant is not disabled.  If not, proceed to step five.  Step five: Does the claimant have the residual functional capacity to perform any other work?  If so, the claimant is not disabled.  If not, the claimant is disabled.  Lester v. Chater, 81 F.3d 821, 828 n.5 (9th Cir. 1995).

[6] An RFC is what a claimant can still do despite existing exertional and nonexertional limitations.  See 20 C.F.R. § 404.1545(a)(1).

[7] "Light work" is defined as

> lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds.  Even though the weight lifted may be very little, a job is in this category when it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing

>lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand and/or walk 6 hours in an 8-hour workday; sit for 6 hours in an 8-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; and occasionally reach overhead with both upper extremities.

(AR 20).

At **step four**, the ALJ found that Plaintiff has no past relevant work. (AR 25). At **step five**, considering Plaintiff's age, education, work experience and RFC, the ALJ found that "there are jobs that exist in significant numbers in the national economy that the [Plaintiff] can perform." (AR 25). The ALJ accepted the vocational expert's testimony that Plaintiff would be able to perform the representative occupations of: laundry worker (DOT 361.685-018); grocery bagger (DOT 902.687-014); and hand packer (DOT 920.587-018). Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Social Security Act, since December 17, 2014, the date Plaintiff filed her application. (AR 26).

IV. **ANALYSIS**

A. **Issue on Appeal**

Plaintiff raises two issue for review: (1) whether the ALJ has properly considered the relevant medical evidence of record in assessing Plaintiff's RFC; and (2) whether the ALJ has properly considered Plaintiff's subjective statements of record and testimony under oath in assessing Plaintiff's RFC. [Dkt. No. 21 (Joint Submission), 4].

---

>and pulling of arm or leg controls. To be considered capable of performing a full or wide range of light work, you must have the ability to do substantially all of these activities.

20 C.F.R. § 404.1567(b); see also Rendon G. v. Berryhill, 2019 WL 2006688, at *3 n.6 (C.D. Cal. May 7, 2019).

### B. Standard of Review

A United States District Court may review the Commissioner's decision to deny benefits pursuant to 42 U.S.C. § 405(g). The District Court is not a trier of the facts but is confined to ascertaining by the record before it if the Commissioner's decision is based upon substantial evidence. Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014) (District Court's review is limited to only grounds relied upon by ALJ) (citing Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003)). A court must affirm an ALJ's findings of fact if they are supported by substantial evidence and if the proper legal standards were applied. Mayes v. Massanari, 276 F.3d 453, 458-59 (9th Cir. 2001). An ALJ can satisfy the substantial evidence requirement "by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Reddick v. Chater, 157 F.3d 715, 725 (9th Cir. 1998) (citation omitted).

"[T]he Commissioner's decision cannot be affirmed simply by isolating a specific quantum of supporting evidence. Rather, a court must consider the record as a whole, weighing both evidence that supports and evidence that detracts from the Secretary's conclusion." Aukland v. Massanari, 257 F.3d 1033, 1035 (9th Cir. 2001) (citations and internal quotation marks omitted). "'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld." Ryan v. Comm'r of Soc. Sec., 528 F.3d 1194, 1198 (9th Cir. 2008) (citing Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005)); see Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006) ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). However, the Court may review only "the reasons provided by the ALJ in the disability determination and may not affirm the ALJ

on a ground upon which he did not rely." Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007) (citation omitted).

Lastly, even if an ALJ errs, the decision will be affirmed where such error is harmless, that is, if it is "inconsequential to the ultimate nondisability determination," or if "the agency's path may reasonably be discerned, even if the agency explains its decision with less than ideal clarity." Brown-Hunter v. Colvin, 806 F.3d 487, 492 (9th Cir. 2015) (citation omitted); Molina v. Astrue, 674 F.3d 1104, 1115 (9th Cir. 2012).

### C. Whether the ALJ Properly Considered The Medical Evidence

Plaintiff contends that the ALJ's opinion is not supported by substantial evidence in that the ALJ failed to properly consider significant medical evidence of record in assessing her RFC. Defendant argues that the ALJ properly considered and weighed all relevant medical evidence of record in assessing Plaintiff's RFC.

1. Standard for Weighing Medical Opinions

The ALJ must consider all medical opinion evidence. 20 C.F. R. § 404.1527(b). "As a general rule, more weight should be given to the opinion of a treating source than to the opinion of doctors who do not treat the claimant." Lester v. Chater, 81 F.3d 821, 830 (9th Cir. 1995) (citing Winans v. Bowen, 853 F.2d 643, 647 (9th Cir. 1987)). Where the treating doctor's opinion is not contradicted by another doctor, it may only be rejected for "clear and convincing" reasons. Id. (citing Bayliss v. Barnhart, 427 F.3d 1211, 1216 (9th Cir. 2005)). "If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence." Trevizo v. Berryhill, 871 F.3d 664, 675 (9th Cir. 2017) (quoting Bayliss, 427 F.3d at 1216).

"Substantial evidence" means more than a mere scintilla, but less than a preponderance; it is such relevant evidence as a reasonable person might accept as adequate to support a conclusion." Lingenfelter v. Astrue, 504 F.3d 1028, 1035 (9th Cir. 2007) (citing Robbins, 466 F.3d at 882). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." Magallanes v. Bowen, 881 F.2d 747, 751 (9th Cir. 1989) (citation omitted); see also Tommasetti v. Astrue, 533 F.3d 1035, 1041 (9th Cir. 2008) (finding ALJ had properly disregarded a treating physician's opinion by setting forth specific and legitimate reasons for rejecting the physician's opinion that were supported by the entire record).

As noted above, an RFC is what a claimant can still do despite existing exertional and nonexertional limitations. See 20 C.F.R. §§ 404.1545(a)(1). Only the ALJ is responsible for assessing a claimant's RFC. See 20 C.F.R. § 404.1546(c). "It is clear that it is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity." Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001) (citing 20 C.F.R. § 404.1545).

### 2. All Medical Evidence of Record Was Properly Considered

As set forth above, the ALJ assessed Plaintiff capable of performing light work with limitations. (AR 20). None of the Plaintiff's treating physicians provided a medical opinion regarding the Plaintiff's functional limitations and Plaintiff does not point to any such opinion here. Furthermore, the majority of the medical opinions assessed Plaintiff capable of performing more work than that assessed by the ALJ, including for medium work. (AR 23-24). The ALJ gave these opinions "little weight" as the

physicians did not have the opportunity to review the medical evidence provided at the reconsideration level and hearing level. (AR 24).

Plaintiff contends that the ALJ failed to properly consider documented evidence of her complaints of pain, weakness and fatigue from anemia, her impairment of carpal tunnel syndrome and her impairment of degenerative disc disease of both the cervical and lumbar spine. Plaintiff is mistaken. The ALJ did a thorough review of the entirety of Plaintiff's medical records, including all of those referenced by Plaintiff. (AR 17-24). The ALJ also thoroughly analyzed the only medical opinions and functional assessments in evidence, those of the three State agency medical consultants and of Vincente Bernabe, D.O., the orthopedic consultative examiner. (AR 23-24). The ALJ gave little weight to the medical opinion of G. Lockie, M.D. finding Plaintiff capable of performing medium work (AR 56-68) and of Dr. Bernabe who assessed Plaintiff capable of being able to lift and carry 50 pounds occasionally and 25 pounds frequently (AR 338-42). Instead, the ALJ gave great weight to State agency medical consultant L. Kiger, M.D. who opined that Plaintiff is able to perform work at the light exertional level with postural and manipulative limitations. (AR 70-82). The ALJ's review of Plaintiff's medical record agreed with Dr. Kiger's opinion and thus he assessed Plaintiff capable of performing light work with additional restrictions to accommodate her medical conditions. As noted, none of Plaintiff's treating physicians provided any functional assessments of her limitations and Plaintiff points to no medical opinions or assessments that the ALJ disregarded.

With regard to Plaintiff's complaint of anemia, Plaintiff takes issue with the ALJ's finding of this condition to be non-severe. The ALJ stated that there "is no medical evidence to establish that the [Plaintiff's] anemia . . . continues to affect the

[Plaintiff] and that it has any effect on her ability to work." (AR 17). The ALJ reviewed Plaintiff's medical records of her anemia treatment as well as her testimony and found this condition to be resolved. (AR 17-18). When questioned about this condition at the Administrative hearing held on October 3, 2017, Plaintiff stated that her anemia had been resolved since the cessation of her menstruation. (AR 43). The ALJ cited to this testimony as well as reviewing her medical records of her treatment for anemia, including two blood transfusions, one in September 2013 and the other in January 2016. (AR 17-18). The ALJ noted that there is no ongoing complaints or aggressive treatment with regard to Plaintiff's anemia and thus found it to be non-severe. (AR 18). Plaintiff here argues that it is reversible error for the ALJ to have failed to properly consider Plaintiff's anemia between 2013 and 2016, including the two blood transfusions. The ALJ, however, did specifically review and even discussed all of the medical records referenced by Plaintiff. There was no error on the part of the ALJ in finding Plaintiff's anemia condition to be non-severe.

With regard to her impairment of carpal tunnel syndrome, which the ALJ found to be severe, Plaintiff argues the ALJ committed reversible error in failing to impose any manipulative limitations in her RFC. As noted above, there is no medical opinions of record recommending such limitations for carpal tunnel restrictions and Plaintiff here cites to no such opinions or points to no medical records with this recommendation. Plaintiff merely points to the medical records where she was diagnosed with carpal tunnel syndrome.[8] The ALJ specifically reviewed and cited to all of the medical records

---

[8] Plaintiff seems to argue that her severe impairment of carpal tunnel syndrome alone should require the ALJ to have included manipulative limitations in her RFC. The diagnosis of a condition alone, however, does not establish disability. See Young v. Sullivan, 911 F.2d 180, 183 (9th Cir. 1990). Rather, Plaintiff must show that her

-10-

Plaintiff states the ALJ failed to consider. Moreover, the ALJ also noted that "the record demonstrates that she has not had ongoing complaints or aggressive treatment with regard to [carpal tunnel syndrome]." (AR 22). The ALJ further noted that during Plaintiff's February 2015 consultative orthopedic examination by Dr. Bernabe:

> claimant's wrists showed normal alignment and contour. There was no tenderness to palpation and range of motion was full and painless in all planes. Inspection of the claimant's hands were similarly unremarkable. The claimant was noted with intact motor strength in the upper extremities. Notably, the claimant did not complain about upper extremity pain or report any limitations.

(AR 22, citing AR 338-42). Thus, the ALJ committed no error in considering Plaintiff's medical records pertaining to her impairment of carpal tunnel syndrome in assessing her RFC.

Finally, Plaintiff argues that her cervical and lumbar degenerative disc disease prevents her from performing the manipulation and/or reaching requirements of the identified jobs and it was error for the ALJ to have assessed her RFC to allow for these jobs. Plaintiff points to certain medical records such as x-rays, MRI findings, recommended injections and claims these records evidence greater limitation than that assessed by the ALJ. The ALJ, however, specifically reviewed and discussed all of the medical records noted by Plaintiff. (AR 21-24). Indeed, the ALJ accounted for these records in limiting Plaintiff to work at the less than light exertional level with postural and manipulative limitations. Plaintiff would simply prefer for those limitations to have been greater. Thus, there was no error by the ALJ in assessing Plaintiff's degenerative

---

impairment causes disabling functional limitations. See 42 U.S.C. § 423(d) (to be disabling, a medically determinable impairment must preclude substantial gainful activity).

disc disease. See Bayliss, 427 F.3d at 1217 (finding that a district court must uphold an RFC assessment when the ALJ has applied the proper legal standard and substantial evidence in the record as a whole supports the decision)

The Court therefore finds the ALJ properly assessed the medical evidence of record. Plaintiff would simply prefer the ALJ to have a different interpretation of the medical evidence than that assessed. However, it is the role of the ALJ to resolve any conflicts or ambiguities in the medical record. See Tommasetti, 533 F.3d at 1041-42 ("The ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence."): Andrews v. Shalala, 53 F.3d 1035, 1041 (9th Cir. 1995) (holding that it is the ALJ's job to resolve any conflicts). See Ryan 528 F.3d at 1198 ("'Where evidence is susceptible to more than one rational interpretation,' the ALJ's decision should be upheld.") (citation omitted); Robbins, 466 F.3d at 882 ("If the evidence can support either affirming or reversing the ALJ's conclusion, we may not substitute our judgment for that of the ALJ."). Indeed, an ALJ is not obligated to discuss "every piece of evidence" when interpreting the evidence and developing the record. See Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1012 (9th Cir. 2003) (citation omitted). Similarly, an ALJ is also not obligated to discuss every word of a doctor's opinion or include limitations not actually assessed by the doctor. See Fox v. Berryhill, 2017 WL 3197215, *5 (C.D. Cal. July 27, 2017); Howard, 341 F.3d at 1012. The Court finds no error by the ALJ in considering the medical record in assessing Plaintiff's RFC.

**D. Whether the ALJ Properly Evaluated Plaintiff's Testimony**

Plaintiff asserts that the ALJ did not properly evaluate her subjective statements and testimony regarding her symptoms and limitations in assessing her RFC.

Defendant, on the other hand, contends the ALJ properly evaluated Plaintiff's subjective statements, finding them inconsistent with the record.

### 1. Legal Standard for Evaluating Claimant's Testimony

A claimant carries the burden of producing objective medical evidence of his or her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms. Benton ex rel. Benton v. Barnhart, 331 F.3d 1030, 1040 (9th Cir. 2003). Once the claimant meets that burden, medical findings are not required to support the alleged severity of pain. Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997) ("claimant need not present clinical or diagnostic evidence to support the severity of his pain") (citation omitted)). Defendant does not contest that Plaintiff carried her burden of producing objective medical evidence of her impairments and showing that the impairments could reasonably be expected to produce some degree of the alleged symptoms.

Once a claimant has met the burden of producing objective medical evidence, an ALJ can reject the claimant's subjective complaint "only upon (1) finding evidence of malingering, or (2) expressing clear and convincing reasons for doing so." Benton, 331 F.3d at 1040. To discredit a claimant's symptom testimony when the claimant has provided objective medical evidence of the impairments which might reasonably produce the symptoms or pain alleged and there is no evidence of malingering, the ALJ "may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear and convincing reasons for doing so." Brown-Hunter, 806 F.3d at 489 ("we require the ALJ to specify which testimony she finds not credible, and then

provide clear and convincing reasons, supported by evidence in the record, to support that credibility determination"); Laborin v. Berryhill, 867 F.3d 1151, 1155 (9th Cir. 2017).

The ALJ may consider at least the following factors when weighing the claimant's credibility: (1) his or her reputation for truthfulness; (2) inconsistencies either in the claimant's testimony or between the claimant's testimony and his or her conduct; (3) his or her daily activities; (4) his or her work record; and (5) testimony from physicians and third parties concerning the nature, severity, and effect of the symptoms of which she complains. Thomas v. Barnhart, 278 F.3d 948, 958-59 (9th Cir. 2002) (citing Light, 119 F.3d at 792). "If the ALJ's credibility finding is supported by substantial evidence in the record, [the court] may not engage in second-guessing." Id. at 959 (citing Morgan v. Apfel, 169 F.3d 595, 600 (9th Cir. 1999)).

      2. <u>The ALJ provided Clear and Convincing Reasons Supported by Substantial Evidence</u>

Having carefully reviewed the record, the Court finds that the ALJ provided specific, clear and convincing reasons for discounting Plaintiff's subjective complaints.[9] The ALJ found that Plaintiff's subjective complaints were not entirely consistent with the medical evidence of record, the undisputed medical opinion evidence and Plaintiff's limited and conservative treatment . (AR 22-23).

Important to note, the ALJ did not entirely reject Plaintiff's testimony concerning her pain, symptoms, and level of limitation. The ALJ stated that he had considered Plaintiff's testimony in limiting her work at the less than light exertional level, which was less than had been assessed by two of the State agency medical examiners. (AR 24-

---

[9] The ALJ did not make a finding of malingering in his opinion. (AR 15-26).

25). Accordingly, the ALJ included limitations in Plaintiff's RFC that she only "occasionally climb, balance, stoop, kneel, crouch, and crawl" and "occasionally reach overhead with both upper extremities." (AR 20).

The ALJ performed a thorough review of Plaintiff's entire medical record and found that it did not fully support Plaintiff's allegations of disabling conditions.[10] The ALJ reviewed and cited to Plaintiff's medical records of her neck, back and wrist issues, her anemia treatment and her psychological treatment and found that the records did not demonstrate that Plaintiff would be unable to perform a range of light exertion, with the express limitations. (AR 17-24). See Chaudhry v. Astrue, 688 F.3d 661, 672 (9th Cir 2012) (the ALJ's determination should not be second-guessed where reasonable and supported by substantial evidence).

The ALJ properly considered how consistent Plaintiff's subjective symptom statements were with this objective medical evidence. 20 C.F.R. § 404.1529(c)(2). This could not be the ALJ's sole reason for rejecting Plaintiff's statements about her symptoms, but it was the primary factor that the ALJ was required to consider. Id.; see also Burch, 400 F.3d at 681 ("Although lack of medical evidence cannot form the sole basis for discounting pain testimony, it is a factor that the ALJ can consider in his credibility analysis."); Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001) (while a

---

[10] Plaintiff contends the ALJ did not provide a legitimate reason for giving little weight to the Third-Party Function Report submitted by Plaintiff's sister-in-law, Lucina Kohr. (AR 175-203). The report is consistent and supportive of Plaintiff's statements and testimony. The ALJ, however, did discuss this evidence and found it to be inconsistent with the record (AR 24); thus, providing a legitimate ground for disregarding. See Parra v. Astrue, 481 F.3d 742, 750 (9th Cir. 2007) ("The ALJ may reject a third party's testimony upon giving a reason germane to that witness"); Bayliss, 427 F.3d at 1218 ("Inconsistency with medical evidence" is a germane reason for discounting lay witness testimony).

claimant's subjective statements about symptomology "cannot be rejected on the sole ground that it is not fully corroborated by objective medical evidence, the medical evidence is still a relevant factor"). Thus, the lack of consistency between Plaintiff's medical records and her testimony was a proper basis for the ALJ's discounting Plaintiff's testimony.

The ALJ also properly considered that the medical opinion evidence, finding Plaintiff capable of performing light work, also contradicted Plaintiff's symptom testimony. (AR 23-24). See Stubbs-Danielson v. Astrue, 539 F.3d 1169, 1175 (9th Cir. 2008) (finding that the medical evidence, including the opinions of two physicians that a claimant could work, supported the ALJ's credibility determination); Moncada v. Chater, 60 F.3d 521, 524 (9th Cir. 1995) (an ALJ may consider physician opinions that claimant could work, which contradict claimant's assertion to the contrary). Plaintiff makes no challenge of the ALJ's findings of the medical opinions he relied on in his decision (AR 23-24) and therefore concedes the ALJ's reliance on this evidence. See Carmickle v. Soc. Sec. Admin., 533 F.3d 1155, 1161 n.2 (9th Cir. 2008) (declining to address credibility factor that plaintiff failed to argue with any specificity in his briefing); Greger v. Barnhart, 464 F.3d 968, 973 (9th Cir. 2006) (claimant waived issues not raised before the district court); Owens v. Colvin, 2014 WL 5602884, at *4 (C.D. Cal. Nov. 4, 2014) (claimant's failure to discuss, or even acknowledge, ALJ's reliance on certain reasons waived any challenge to those aspects of ALJ's finding).

The ALJ's finding that Plaintiff's treatment was fairly limited and conservative was also a proper basis for discounting Plaintiff's testimony as to her disabling condition. (AR 23). An ALJ may properly consider Plaintiff's treatment history in analyzing Plaintiff's asserted symptoms. 20 C.F.R. § 404.1529(c)(3)(iv),(v),(vi) (factors

relevant to a claimant's symptoms, such as pain, which the Commissioner will consider include medication taken to alleviate symptoms; treatment received for pain; and measures used to relieve pain); see also Burch, 400 F.3d at 681 (holding that "ALJ is permitted to consider lack of treatment in his credibility determination"); Moncada, 60 F.3d at 524 (claimant's allegations of disabling pain can be discredited by evidence of infrequent medical treatment or by the minimal use of pain medication). The ALJ noted that the record does not indicate that Plaintiff has been recommended for surgery and that Plaintiff testified she received only a brief course of physical therapy in the past, but no longer receives any therapy. (AR 23).

Plaintiff contends that her treatment is not conservative as she has undergone injections, blood transfusions and takes pain medication.[11] Plaintiff's blood transfusions, however, relate to her anemic condition, which Plaintiff testified is now resolved with the cessation of her menstruation. Furthermore, the taking of pain medication and some physical therapy does not render erroneous the ALJ's finding that Plaintiff's treatment was conservative. See Jones v. Comm'r of Soc. Sec., 2014 WL 228590, *7-10 (E.D. Cal. Jan. 21, 2014) (ALJ properly found Plaintiff's treatment conservative, which included physical therapy, both anti-inflammatory and narcotic medications, use of a TENS unit, occasional epidural steroid injections, and massage

---

[11] The Court notes, as pointed out by the ALJ, that Plaintiff testified she received injections and that there are treatment notes in the record that indicate Plaintiff was recommended for an epidural injection. (AR 21). There are no medical records, however, of Plaintiff's receipt of these injections. Regardless, Plaintiff's supposed receipt of epidural injections do not qualify as conservative treatment. See Garrison v. Colvin, 759 F.3d 995, 1015 n.20 (9th Cir. 2014) (expressing "doubt that epidural steroid shots to the neck and lower back qualify as 'conservative' medical treatment"). These injections, however, without more, do not change the fact that Plaintiff's care was overall limited and conservative, as expressed by the ALJ.

therapy, diminished her credibility); <u>Higinio v. Colvin</u>, 2014 WL 47935, *5 (C.D. Cal. Jan. 7, 2014) (holding that, despite the fact that the claimant had been prescribed narcotic medication at various times, the claimant's treatment as a whole was conservative); <u>Parra</u>, 481 F.3d at 751 )(finding that proof of "conservative treatment is sufficient to discount a claimant's testimony regarding severity of an impairment"); <u>Meanel v. Apfel</u>, 172 F.3d 1111, 1114 (9th Cir. 1999) (finding that an ALJ can rely on a physician's failure " to prescribe… any serious medical treatment for [a claimant's] supposedly excruciating pain").

Based on these clear, convincing and specific reasons for partially rejecting Plaintiff's pain and limitations testimony and the substantial evidence to support his determination, the Court concludes that the ALJ did not commit error in discounting Plaintiff's testimony.

## V. **CONCLUSION**

For the reasons stated above, the decision of the Social Security Commissioner is AFFIRMED, and the action is DISMISSED with prejudice.  Judgment shall be entered accordingly.

DATE: September 25, 2020

                                   /s/ Autumn D. Spaeth  
                              THE HONORABLE AUTUMN D. SPAETH  
                              United States Magistrate Judge